COURT OF APPEALS OF VIRGINIA


Present:    Judges McClanahan, Petty and Senior Judge Annunziata
Argued at Alexandria, Virginia


ROBERT ALLEN WEST

 v.            Record No. 0627-07-4                 MEMORANDUM OPINION* BY
                                                   JUDGE ELIZABETH A. McCLANAHAN
COMMONWEALTH OF VIRGINIA                               APRIL 22, 2008


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Leslie M. Alden, Judge

            Michael J. Lindner for appellant.

            Jennifer C. Williamson, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        George ("Rick") Johnson died of multiple gunshot wounds on March 20, 2006, when his

roommate, Robert Allen West, shot him in the head, face, chest, and arm with a .22 caliber long

rifle Smith & Wesson semi-automatic.  West admitted that he shot Johnson, but claimed he acted

in self-defense after Johnson threatened him with a dinner fork.  West was convicted in a jury

trial of second-degree murder in violation of Code § 18.2-32, and for use of a firearm while

committing murder in violation of Code § 18.2-53.1.  On appeal, West contends the trial court

erred in admitting the hearsay testimony of the victim, George Johnson, through Robert

Plummer, under the "state of mind" exception to the hearsay rule.  For the reasons that follow,

we affirm appellant's convictions.


---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. Background

West testified that late in the afternoon on the day of the shooting, he and Johnson began their daily ritual of sitting around the dining room table drinking beer and talking. Soon thereafter, Johnson started "spewing his typical expletives," which escalated during the early evening hours. At one point, Johnson came out of the kitchen holding a plate of food in one hand and a fork in the other. When West got up from the table and started to walk past him, Johnson "swiped the fork at [him]." As Johnson sat down, West went to his bedroom (approximately twenty-five feet down the hall from the dining area), got his .22 long rifle and loaded it. West testified that he did not stay in his room or drive away as he had admittedly done on prior occasions because "he wanted to make [his] supper" and he "didn't want to be chased into [his] bedroom and forced to be locked away again." Indeed, West agreed on cross-examination that he made a conscious choice to leave the safety of his room with a loaded gun and return to the dining area and join Johnson at the table.

West testified that Johnson was still making derogatory comments towards him when he returned to the dining area. Without saying anything in response, West fired a warning shot into the floor near Johnson's feet. West then sat down in the chair opposite Johnson and put the gun in his lap and his hands on the table and "more or less" waited to see Johnson's reaction.

According to West, Johnson started to get up from the table and told West he was going to stab him in the eye with the fork. Johnson was leaning forward and sliding around the table with the fork in his hand. At this point, West picked up his gun from his lap and started firing. West claimed he did not know how many shots he fired and only knew that he stopped firing when Johnson stopped approaching.

Noel Hollingshead, the downstairs neighbor, testified that when he heard the gunshots, he ran upstairs and looked inside through the side door. When he saw Johnson on the floor not

moving, he ran back downstairs to call 911. While he was on the phone with the 911 dispatcher, West knocked on the door. The defendant informed Hollingshead that he had just shot Johnson and that an ambulance would do no good because Johnson was already dead. West also asked if he could store his guns in Hollingshead's apartment, to which Hollingshead responded, "No way." Hollingshead asked West why he did it, and West replied that Johnson was "on his shit and waving a fork."

Detective Dennis Harris testified he investigated the crime scene and then interviewed West.[1] West admitted to Harris that Johnson had not followed him down the hall when he went to his bedroom and that he was "pissed." Detective Harris asked West if he was still "pissed" when he returned to the dining area with his gun, and West said, "I was pretty much neutral. I was just kind of waiting to see attitude."

Assistant Chief Medical Examiner Constance DiAngelo, an expert in forensic pathology, performed an autopsy on Johnson, and her written report was admitted as evidence at trial. Dr. DiAngelo stated to a reasonable degree of certainty that, since the majority of the bullets had a downward path, the gun either had to be higher than the victim, or the victim's body had to be lower in relation to the end of the gun.

Gary Arntsen, an expert in firearms and toolmaking, testified that he examined the .22 caliber Smith & Wesson semi-automatic gun used to shoot Johnson. Arntsen stated that during the firing process, the gun would not have stayed still. A shooter would have to keep a conscious hold of the weapon while firing the gun eight times as West did. Arntsen testified bullets fired from the weapon would have traveled in a straight line to the point of impact when fired in close proximity, as they were in this case. Consistent with Dr. DiAngelo's testimony, Arntsen's expert opinion was that, in order for a bullet to have entered the top of the victim's head in the manner

---

[1] The taped interview was played for the jury.

it did, the firearm or the victim would have to be positioned so that there was a straight line between the muzzle and the entry hole.

## II.  Testimony of Robert Plummer

On appeal, West asserts the trial court erred by allowing testimony from Robert Plummer, Johnson's co-worker.  Plummer testified as follows:

> Q:    What did Mr. Johnson tell you on that occasion[2] about the Defendant?
> A:    He had put a gun to his head.
>
> Q:    Who put a gun to his head?
>
> A:    Mr. West.
>
> Q:    Did he tell you what, if anything, the Defendant said to him when he put the gun to his head?
>
> A:    Said he was going to pull the trigger.
>
> Q:    Can you tell us, Mr. Plummer, what, if anything, else your friend, Mr. Johnson, said about that incident?
>
> A:    He said he told him that to go ahead and do it and that he did not have the guts to do it.

Assuming without deciding that Plummer's testimony was inadmissible hearsay, we find that the admission of Plummer's testimony was harmless error.  A criminal conviction must be reversed for non-constitutional error unless "'it plainly appears from the record and the evidence given at the trial'" the error did not affect the verdict.  Lavinder v. Commonwealth, 12 Va. App. 1003, 1005-06, 407 S.E.2d 910, 911 (1991) (*en banc*) (quoting Code § 8.01-678).[3]

---

[2] While at work approximately a month prior to the shooting, Johnson spoke with Plummer about an altercation between West and himself that occurred that past weekend.

[3] Code § 8.01-678 provides, in pertinent part, as follows:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no

Non-constitutional error is harmless "'if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same,'" Turner v. Commonwealth, 23 Va. App. 270, 275, 476 S.E.2d 504, 507 (1996) (quoting Davies v. Commonwealth, 15 Va. App. 350, 353, 423 S.E.2d 839, 840 (1992)), aff'd, 255 Va. 1, 492 S.E.2d 447 (1997), and that "substantial justice has been reached," Code § 8.01-678. "In order to determine whether 'substantial justice has [thus] been reached,' a reviewing court must decide whether . . . the alleged error substantially influenced the jury." Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001).

The admission of Plummer's testimony did not substantially influence the verdict in this case. Here, the probative value of Plummer's testimony utterly pales in significance to all of the other evidence submitted to the jury at trial. In addition to the expert testimony that the angle and trajectory of the bullets fired into Johnson indicated West was standing above him, the jury heard a plethora of evidence that established West did not kill Johnson in self-defense. To the contrary, the evidence supports the jury's finding that West was the aggressor. Removing himself from Johnson, West left the room, loaded a gun, and then returned. After he fired a "warning" shot, West sat back and waited to "see attitude." West's assertion that he feared for his life because Johnson threatened him with a dinner fork, while he was armed with a loaded .22 caliber semi-automatic gun, is utterly implausible. The defendant's own testimony and the statements to Detective Harris demonstrated a motive and intent to kill, thus leading ineluctably to the conclusion that the verdict was not affected by the admission of Plummer's testimony.

judgment shall be arrested or reversed . . . for any . . .
defect, imperfection, or omission in the record, or for any
other error committed on the trial.

- 5 -

When other evidence of the defendant's guilt is overwhelming, error may be deemed harmless.

See Rose v. Commonwealth, 270 Va. 3, 12-13, 613 S.E.2d 454, 459 (2005).

Accordingly, we affirm appellant's convictions.

Affirmed.